# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-1182 (JFB) (ETB)
_____

MEGHAN WURTZ AND MINDY BURNOVSKI, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

THE RAWLINGS COMPANY, LLC, OXFORD HEALTH PLANS (NY), INC., AND
UNITEDHEALTH GROUP, INC.,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 28, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Meghan Wurtz ("Wurtz") and Mindy Burnovski ("Burnovski") bring this class action on behalf of themselves and all others similarly situated (collectively, "plaintiffs")[1] against The Rawlings

Company, LLC ("Rawlings"), Oxford Health Plans (NY), Inc. ("Oxford Health"), and UnitedHealth Group, Inc. ("UnitedHealth") (collectively, "defendants"). Plaintiffs seek compensatory and punitive damages, restitution, attorneys' fees, and declaratory relief arising from defendants' allegedly improper enforcement of claims/liens for reimbursement following Oxford Health's payment of plaintiffs' medical expenses pursuant to its health benefit plans with plaintiffs' employers. In

---

[1] Plaintiffs seek to represent a class of, *inter alia*, "all persons who have paid monies to Defendants and/or their agents pursuant to fully insured health insurance plans in violation of New York State General Obligation Law § 5-335 . . ., all persons against who Defendants and/or their agents have, pursuant to their fully insured health insurance plans, wrongfully asserted and continue to assert liens and/or rights of subrogation and/or reimbursement from settled cases and/or claims covered by NY GOL § 5-335,

and . . . all persons covered by a fully insured health insurance policy with respect to any personal injury . . . or similar cases or claims arising and/or pending in New York." (Compl. ¶ 29.)

particular, plaintiffs assert that New York General Obligations Law § 5-335 ("NY GOL § 5-335") trumps any reimbursement rights that defendants might have under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and/or the terms of their health benefit plans, and furthermore, that defendants are in violation of NY GOL § 5-335 by virtue of their assertion of such rights. Plaintiffs accordingly argue that (1) declaratory judgment is warranted because NY GOL § 5-335 bars reimbursement or subrogation under defendants' health benefit plans; (2) defendants' actions constitute deceptive acts and practices pursuant to Section 349 of New York's General Business Law ("NY GBL § 349"); and (3) defendants wrongfully benefited from their unlawful acts, misrepresentations, and omissions, and accordingly, have been unjustly enriched at plaintiffs' expense.

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) plaintiffs' claims are completely preempted pursuant to Section 502 of ERISA, as they directly concern rights under their ERISA-governed benefit plans and do not implicate a legal duty independent of the plans; (2) plaintiffs' claims are expressly preempted pursuant to Section 514 of ERISA; (3) even if plaintiffs were to try and bring their claims under ERISA § 502(a)(1)(B), their claims would be deficient, thereby requiring dismissal; and (4) plaintiffs' state law claims fail on their own terms.

After careful consideration of the parties' arguments, and for the reasons set forth herein, the Court grants defendants' motion to dismiss.

## I. Facts

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for purposes of deciding the pending motion to dismiss. The Court construes the facts in the light most favorable to plaintiffs, the non-moving party.

### A. Accidents, Legal Actions, Liens, and State Laws

Both Wurtz and Burnovski are participants in health benefit plans ("Plans" or "Oxford Health Plans") that are provided by their employers and insured by Oxford Health. Pursuant to the express terms of these Plans, Oxford Health is entitled to be reimbursed for health benefits provided to a member if he or she recovers the cost of those benefits from a third party. (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 2.) As discussed in greater detail *supra*, Wurtz and Burnovski suffered injuries arising from separate accidents; each then received medical benefits from Oxford Health and brought suit against those parties allegedly responsible for their injuries. (Compl. ¶¶ 6-7.) Because of this, Rawlings, acting as Oxford Health's subrogation claims recovery vendor, corresponded with plaintiffs and/or their counsel, asserting "claims/liens" for reimbursement of Oxford Health's coverage of such expenses, and requesting notification prior to any settlement of their claims. (*Id.* ¶¶ 18-19, 21.)

### 1. Background on the Health Care Entities

UnitedHealth is a self-described "leader in the health benefits and services industry," offering various services in the health care field. (*Id.* ¶ 10.) Oxford Health is a health

insurance company that provides health insurance benefit plans. (*Id.* ¶ 11.) In 2004, Oxford Health and UnitedHealthcare (an operating division of defendant UnitedHealth) joined forces and merged. (*Id.*)[2]

Rawlings is a self-described "recognized leader in the healthcare subrogation services field." (*Id.* ¶ 8.) The company acts as a collection agent, or subrogation claims recovery vendor, on behalf of Oxford Health,[3] helping it to process claims and recover money for debts owed for prior healthcare services. (*Id.*) For purposes of the underlying dispute, these companies' respective roles in the healthcare industry all became intertwined following events involving Wurtz, Burnovski, and incidents leading to their individual personal injuries and damages. Before addressing the events leading to the underlying dispute, the Court addresses NY GOL § 5-335.

## 2. New York Statutory Law

On November 10, 2009, Senate Bill S66002 was passed by both the New York State Senate and Assembly; it became effective on November 12, 2009. (*Id.* ¶ 13.) Senate Bill S66002, in effect, amended New York's General Obligations Law by adding a new section, Section 5-335, around which this dispute centers. The relevant portions of

Section 5-335, at least for purposes of this dispute, are as follows:

§ 5-335. Limitation of Non-Statutory Reimbursement and Subrogation Claims in Personal Injury and Wrongful Death Actions.

(a) When a plaintiff settles with one or more defendants in an action for personal injuries . . ., it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, *except for those payments as to which there is a statutory right of reimbursement*. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.

*Except where there is a statutory right of reimbursement*, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.

(*Id.* ¶ 14 (emphasis added).)

---

[2] Although plaintiffs' pleadings make clear that Oxford Health and UnitedHealth merged in 2004, it is not clear if the companies subsequently became one company with a single name. The complaint repeatedly refers to each company as a seemingly separate entity, despite the alleged 2004 merger, and it is unclear how the respective entities' merger affected each company's business status or division of responsibilities.

[3] The Court assumes that any subrogation actions that Rawlings takes on behalf of Oxford Health are, following the latter's merger with UnitedHealth, also taken on behalf of UnitedHealth.

### 3. Wurtz and Burnovski

Wurtz is a resident of Little Rock, Arkansas who, on April 4, 2008, sustained personal injuries and damages in an accident. (Compl. ¶ 6.)[4] Due to her injuries, Wurtz received medical benefits from her Oxford Health Plan, entitled "Freedom Plan Metro Access." (*Id.*) Similarly, Burnovski is a resident of Long Beach, New York who was in a motor vehicle accident on July 5, 2008. (*Id.* ¶ 7.) Burnovski sustained both personal injuries and damages from the accident, for which she received medical benefits from her fully insured Oxford Health Plan, entitled the "Oxford Exclusive Plan Metro," or the "Oxford Freedom EPO Plan." (*Id.*)

On December 9, 2008, Wurtz filed a lawsuit in the Supreme Court of the State of New York, seeking to recover for the injuries and damages she suffered from the April 2008 accident. (*Id.* ¶ 6.) She later settled this action on October 28, 2011. (*Id.*)

Although the chronological nature of events is unclear from the pleadings, it appears that sometime between the enactment of NY GOL § 5-335 and Wurtz's settlement, Rawlings, pursuant to its subrogation responsibilities with Oxford Health, contacted both Wurtz and Burnovski (via mail or fax) asserting a claim/lien that sought reimbursement for Oxford Health's coverage of Wurtz and Burnovski's respective medical expenses, the former of which totaled $1,316.87 (*id.* ¶¶ 6, 18-19), and the latter of which totaled $78,991.48 (*id.* ¶ 7).[5]

On receiving notice from Wurtz that her personal injury action settled on October 28, 2011, Rawlings again sent Wurtz a letter informing her that its lien on behalf of Oxford Health remained in effect. (*Id.* ¶ 19.) Rawlings included with this letter the Company's November 2009 position statement. (*Id.*) In addition, Rawlings also stated:

> This letter shall serve as notice that our client has a claim/lien for medical benefits paid on behalf of the patient for the above-referenced loss. These medical expenses were paid pursuant to an ERISA plan governed by federal law. There are differing legal viewpoints regarding the application of New York law CPLR § 4545 and General Obligations Law 5-335 as amended by Governor's Program Bill 95/S66002 effective November 12, 2009. This claim/lien applies to any amount now due or which may hereafter become payable out of a recovery collected or to be collected, whether by judgment, settlement, or compromise, from any party hereby notified. No settlement of any claim should be made prior to notifying our office of the potential settlement and reaching an agreement for satisfaction of our client's interest.

(*Id.*) Rawlings sent Burnovski a letter containing this same language on November 30, 2011. (*Id.* ¶ 21.)

---

[4] The nature of Wurtz's accident is unclear from the pleadings.
[5] The complaint confusingly states that Rawlings sought to recover medical expenses from "Plaintiff Sylvia Potts." (Compl. ¶ 6.) The Court understands the Complaint's reference to a "Sylvia Potts" to be a typographical error, given that the entire paragraph discusses Wurtz's accident, subsequent medical expenses, settlement, and her paying off the lien asserted by Rawlings.

On January 10, 2012, Wurtz paid Rawlings $1,316.87 to release its lien under the Oxford Health Plan. (*Id.* ¶¶ 6, 20.) Burnovski does not allege that she has settled her personal injury lawsuit or satisfied the reimbursement claim.

## II. PROCEDURAL HISTORY

On February 2, 2012, plaintiffs filed the instant action against defendants in the Supreme Court of the State of New York for the County of Nassau. Defendants removed the action to this Court on March 9, 2012. On May 30, 2012, defendants submitted a motion to dismiss. On June 29, 2012, plaintiffs filed their opposition to defendants' motion to dismiss. Defendants submitted their reply on July 16, 2012. On December 26, 2012, the case was reassigned to the undersigned, and oral argument was subsequently held on January 22, 2013. On January 29, 2013 and February 6, 2013, the parties submitted letters addressing issues raised during oral argument. This matter is fully submitted and the Court has considered all of the party's submissions.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure probe the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). Stated differently, when assessing the viability of a complaint's pleadings at the Rule 12(b)(6) stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal alternation omitted). Thus, when reviewing a motion to dismiss, "the [c]ourt must accept

the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Volpe v. Nassau Cnty.*, 12-CV-2416 (JFB)(AKT), 2013 WL 28561, at *5 (E.D.N.Y. Jan. 3, 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, this standard for survival does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Nasso v. Bio Reference Labs., Inc.*, No. 11-cv-3480(JFB)(ETB), 2012 WL 4336429, at *3 (quoting *In re Merrill Lynch*

*& Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)) (internal citations omitted).

## IV. DISCUSSION

Defendants contend that plaintiffs are attempting to use state law to negate their obligations to reimburse their respective employers' benefit Plans from proceeds recovered from third party tortfeasors. Defendants argue that plaintiffs' claims, grounded in NY GOL § 5-335, are superseded under two parallel and independent principles of preemption: (1) complete preemption under ERISA § 502(a), and (2) express preemption under ERISA § 514.[6] For this reason, defendants assert that this Court should dismiss plaintiffs' claims, even if NY GOL § 5-335 may be deemed applicable to the governing ERISA-regulated plans (which defendants claim it cannot). As set forth below, the Court agrees with defendants.

---

[6] Complete preemption applies where Congress has so "completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Bloomfield v. MacShane*, 522 F. Supp. 2d 616, 620 (S.D.N.Y. 2007) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)) (internal quotation marks omitted). In contrast, express preemption applies where a federal law "contains an express preemption clause," requiring the court to "'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). As set forth *infra*, the Court concludes that plaintiffs' claims (including their declaratory judgment, unjust enrichment, and NY GBL § 349 claims) are both completely and expressly preempted pursuant to ERISA's expansive scope regarding employment benefit plans. *See Metro. Life*, 481 U.S. at 63-64.

## A. Complete Preemption

### 1. Legal Standard

ERISA was enacted to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alteration in original). Its main objective "is to provide a uniform regulatory regime over employee benefit plans." *Id.; see also also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) ("Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" (alterations in original) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990))).

To provide such uniformity, the statute contains broad preemption provisions, which safeguard the exclusive federal domain of employee benefit plan regulation. *See Davila*, 542 U.S. at 208; *see also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). One such source of preemption under ERISA is Section 502(a)(1)(B), which serves as ERISA's main enforcement tool in ensuring a uniform federal scheme. Section 502(a)(1)(B) of ERISA provides:

A civil action may be brought – (1) by a participant or beneficiary - . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has explained that "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Supreme Court has noted how "the inclusion of certain remedies and the exclusion of others under [§ 502's] federal scheme . . . 'provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). It likewise has acknowledged that "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.*

For this reason, where a plaintiff brings a state law claim that is in reality an ERISA-claim cloaked in state-law language, ERISA's preemption power will take effect. *See Davila*, 542 U.S. at 207 (stating that "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed" to federal court (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)) (alterations and internal quotation marks omitted)); *id.* at 207-08

("[W]hen the federal statute completely pre-empts the state-law cause of action, . . . even if pleaded in terms of state law, [it] is in reality based on federal law." (citation and internal quotation marks omitted)); *id.* at 208 (describing ERISA as "one of these statutes" that holds complete preemption power). The effect of this preemptive power cannot be understated: it "prevents plaintiffs from 'avoid[ing] removal' to federal court 'by declining to plead necessary federal questions.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298-99 (2d Cir. 2012) (quoting *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010)) (alteration in original).

The relevant test for assessing whether a claim is completely preempted under ERISA consists of two parts:

> claims are completely preempted by ERISA if they are (i) brought by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions."

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (quoting *Davila*, 542 U.S. at 210); *see also Davila*, 542 U.S. at 210 ("[I]f an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."); *Metro. Life*, 481 U.S. at 65-66 (noting that section 502(a)(1)(B) of ERISA contains "extraordinary pre-emptive power" that "converts an ordinary state common law complaint into one stating a federal claim," making "causes of action within the scope of . . . § 502(a) . . . removable to federal

court"). Additionally, "[t]o avoid potential confusion under the first prong of *Davila*, [the Second Circuit] has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Arditi*, 676 F.3d at 299. Where both of *Davila*'s factors are satisfied – including the two sub-parts to *Davila*'s first prong – ERISA will preempt the state law claim. *Id.* (citing cases).

### 2.   Application

#### a.   *Davila* Prong One

The Court first addresses whether plaintiffs are "the *type* of party that can bring a claim" under Section 502(a)(1)(B); it then considers "whether the *actual claim*" at issue constitutes a "colorable claim" for benefits under Section 502(a)(1)(B). *Montefiore*, 642 F.3d at 328; *see also Josephson v. United Healthcare Corp.*, No. 11-cv-3665(JS)(ETB), 2012 WL 4511365, at *3 (E.D.N.Y. Sept. 28, 2012) (acknowledging the Second Circuit's interpretation of *Davila*'s two-pronged test as consisting of two inquiries under the first prong).

##### i.   Type of Party

As previously set forth, Section 502(a)(1)(B) clearly provides that a civil action may be brought (1) "by a participant or beneficiary" of (2) an ERISA employee benefit plan. 29 U.S.C. § 1132(A)(1)(B). Examining each in turn, it is clear that both of these factors is satisfied in this case.

To begin with, Oxford Health's fully insured Plans constitute an employee welfare benefit plan within the meaning of

Section 3(1) of ERISA, 29 U.S.C. § 1002(1).[7] Further, plaintiffs each qualify as a "participant or beneficiary" of their employers' health Plans, as they were eligible for benefits (which they received) under the Plans. (*See* Compl. ¶¶ 6-7); *see also* 29 U.S.C. § 1002(7) (defining "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit").) Thus, plaintiffs meet at least the initial standing requirements to bring a civil action under Section 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B); *see also Arditi*, 676 F.3d at 299 (finding that plaintiff "is the type of party who can bring an ERISA claim because he is a Plan participant and he is seeking benefits under the Plan").

##### ii.   Colorable Claim

Defendants assert that plaintiffs' cause of action here – seeking a judgment concluding that the Plans' reimbursement provisions are not applicable to them by virtue of NY GOL § 5-335 – is in fact a claim under Section 502(a)(1)(B) of ERISA. (*See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mot. to Dismiss") at 7; Defs.' Reply at 2.)

Plaintiffs first argue that the medical benefits they received under their Plans are not subject to the latter's subrogation and/or

---

[7] Section 3(1) of ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits." 29 U.S.C. § 1002(1).

reimbursement provisions because NY GOL § 5-335 nullifies any such lien power; ergo, plaintiffs are entitled to hold onto the previously received benefits. (Compl. ¶ 41.) Second, plaintiffs argue that their claims are not for a "right to payment," which would implicate ERISA's provisions, but rather, solely concern an "amount to payment" under the Plans. (Pls.' Opp'n at 4-6.) The Court addresses each of these arguments in turn.

### a) Whether Plaintiffs' Claims Sound in Benefits

As to their benefits argument, it is not enough for plaintiffs to simply assert that their claims as to benefit entitlement are dictated by state law so as to shield their claims from ERISA's preemptive force. Instead, reading the pleadings in the light most favorable to plaintiffs and drawing all inferences in their favor, it must be reasonable and appropriate for the Court to conclude that the underlying allegations here are not ones that, for all intents and purposes, fall under Section 502(a)(1)(B) of ERISA. *See Davila*, 542 U.S. at 210 (noting that Section 502(a) will preempt a state law claim where two conditions are met, the first of which is that a plaintiff "could have brought his or her claim under ERISA § 502(a)(1)(B)"); *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 434 (S.D.N.Y. 2006).

Section 502(a)(1)(B)'s language is clear: it provides an exclusive civil remedy to "participants or beneficiaries" of an ERISA-governed plan "to *recover benefits due under their plans*, to *enforce rights under their plans*, or to *clarify rights to future benefits under their plans.*" *Arditi*, 676 F.3d at 299 (emphasis added) (citing 29 U.S.C. § 1132(a)). Plaintiffs' allegations in this case, even when read in their favor, directly

implicate issues concerning benefits due under the Plans, as well as their right to such benefits. (*See* Compl. ¶ 6 ("Defendant Rawlings, as agent for Defendant Oxford Health Plans (NY), has asserted . . . a lien under Defendant Oxford Health (NY) fully insured Freedom Plan Metro Access insurance plan to recover from Plaintiff . . . medical expenses in the sum of $1,316.87 . . . . The lien [c]laimed by the Defendant The Rawlings Company, LLC and United Healthcare Oxford Health Care Plan (NY) is invalid as a matter of law in violation of NY GOL § 5-335."); *id.* ¶ 7 ("As a result of the personal injuries that Plaintiff Burnovski sustained in [her] accident, Ms. Burnovski received medical benefits through her fully insured United Healthcare Oxford Insurance plan . . . . Defendant Rawlings . . . has asserted and continues to assert a lien under Defendant Oxford Health Plans' fully insured [] Plan, and presently seeks to recover from Plaintiff [Burnovski] medical expenses in the sum of $78,991.48 in violation of NY GOL § 5-335.").)

Moreover, plaintiffs' particular causes of action – for declaratory judgment, unjust enrichment, and deceptive conduct under NY GBL § 349 – while not pled as claims for benefits under Section 502(a)(1)(B) of ERISA, may fairly be characterized as such, only masked in state law guise. That is, plaintiffs effectively seek to cut off defendants' reimbursement rights under the Plans, and to retain benefits that otherwise would be subject to reimbursement. These actions directly fall within the scope of Section 502(a)(1)(B), which includes actions "to recover benefits due . . . under the terms of [an employer benefit] plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132.

Turning first to the declaratory judgment cause of action, the Fifth Circuit addressed a similar claim in *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) (en banc). In that case, the plaintiff sought declaratory judgment requiring a health insurer to release its lien, as well as its subrogation, reimbursement, and assignment claims, that targeted compensation previously received by the insured following injuries suffered in an automobile accident. *Id.* at 435-36. Plaintiff argued that a Louisiana state law statute, which prohibited a reduction in health insurance benefits, barred the health insurer from asserting a right of subrogation to the plaintiff's personal injury cause of action, and moreover, from its right to reimbursement of any tort settlement funds that the insured received. *Id.* The panel held that plaintiff's claim was a claim for benefits under the terms of the governing plan, and therefore, was preempted by ERISA. *Id.* at 437-38. Of particular relevance here is the following language:

> [Plaintiff's] benefits are under something of a cloud, for [the health insurer] is asserting a right to be reimbursed for the benefits it has paid for [plaintiff's] account. It could be said, then, that although the benefits have already been paid, [plaintiff] has not fully "recovered" them because he has not obtained the benefits free and clear of [the health insurer's] claims. Alternatively, one could say that [plaintiff] seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan.

*Id.* at 438. For these reasons, the Fifth Circuit concluded that plaintiff's declaratory judgment claim was completely preempted under ERISA § 502(a)(1)(B), as plaintiff – despite couching his claims in Louisiana law and claiming that such nullified the plan's reimbursement power – essentially sought to "recover" or "enforce" his rights under the terms of his health insurance benefit plan. *Id.* at 440. The same logic may be applied here, where plaintiffs, for all intents and purposes, seek to determine their right to retain or recover benefits available under the Plans free of Oxford Health's (by means of Rawlings) reimbursement or subrogation lien.

Turning next to plaintiffs' unjust enrichment cause of action, both the Third and the Fourth Circuit Courts of Appeal offer useful guidance in this area. In *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278 (4th Cir. 2003), the Fourth Circuit considered whether claims of unjust enrichment and negligent misrepresentation, raised against an insurer's subrogation and reimbursement actions, were actually claims for "benefits due." The Fourth Circuit concluded that plaintiffs' claims were preempted by ERISA, stating:

> [Plaintiff's] claim to recover the portion of her benefit that was diminished by her payment to [the health insurer] under the unlawful subrogation term of the plan is no less a claim for recovery of a plan benefit under § 502(a) than if she were seeking recovery of a plan benefit that was denied in the first instance. Whether a State law defines the quantum of a benefit by negating subrogation terms that would diminish the benefit . . . ERISA's complete dominion over a plan participant's claim to recover a benefit due under a lawful application of plan terms is not affected by the fortuity of *when* a

10

plan term was misapplied to diminish the benefit.

*Id.* at 291.

The Third Circuit addressed a similar claim of unjust enrichment in *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005). In that case, the Third Circuit concluded that plaintiffs' unjust enrichment claim – that plaintiffs were entitled to certain health benefits and that the providers wrongly sought reimbursement of the same – was "[e]ven more than in *Arana*, . . . [a claim] for benefits due." *Id.* at 163. This was so, even though plaintiffs argued that New Jersey law nullified the insurance policies' subrogation and reimbursement provisions, and even though plaintiffs already had paid a portion of their received benefits back to the insurer. *Id.* The Third Circuit, agreeing with both the Fifth Circuit's reasoning in *Arana* and the Fourth Circuit's in *Singh*, concluded that where "plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' and federal jurisdiction under section 502(a) of ERISA is appropriate." *Id.*

The Court finds the Third, Fourth, and Fifth Circuit Courts of Appeals' holdings regarding other plaintiffs' declaratory judgment and unjust enrichment actions relevant and persuasive here. Try as they might, plaintiffs' argument that they are not making a claim for benefits, but simply seeking a determination as to defendants' right (or lack thereof, by virtue of state law) to reimbursement under the Plans, cannot save their arguments from ERISA's preemptive force. Plaintiffs do not dispute that they received their medical benefits under health plans that conditioned the receipt of such benefits upon potential reimbursement. (*See* Pls.' Opp'n at 2

(stating "the boilerplate terms of the insurance health plans entitled Defendant Oxford to seek reimbursement for health benefits if a plan participant recovers the cost of those benefits from a responsible third party").) Instead, their sole point of contention is that NY GOL § 5-335 voids the Plans' reimbursement clause. (*Id.*) However, plaintiffs' claim, although characterized as one looking only at state law, is really about their right to *keep* the monetary benefits received from defendants under their ERISA-governed plans; this triggers issues concerning their rights and ability to recover (and/or retain) benefits under the Plans, and accordingly, brings ERISA § 502(a)(1)(B) directly into play.

As to plaintiffs' deceptive conduct under NY GBL § 349 cause of action, the Court similarly concludes that the crux of this claim is one for benefits under ERISA § 502(a)(1)(B). In stating their cause of action, plaintiffs again point to the Plans' reimbursement provisions and identify as the alleged deceptive acts at issue defendants' conduct of asserting liens on tort settlements following the provision of medical benefits to plaintiffs. (*See* Compl. ¶¶ 44-48.) The relief sought under this claim is the amount of reimbursement paid (or to be paid) under plaintiffs' interpretation of the Plans' reimbursement provisions (which they assert is modified by NY GOL § 5-335). Thus, plaintiffs' NY GBL § 349 claim, while cloaked in NY GOL § 5-335 argumentation, is again one for benefits under the ERISA-governed Plans. This is ERISA, and not state law, governed territory. *See Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994) (stating that ERISA preempts state law causes of action that seek "to recover benefits due to [the plaintiff under the terms of the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to

future benefits under the terms of the plan" (alterations in original) (quoting 29 U.S.C. § 1132(a)(1)(B))).

In sum, no matter how reasonably the Court reads plaintiffs' allegations (of unjust enrichment, declaratory judgment, or deceptive conduct under NY GBL § 349) in their favor, the essence of plaintiffs' claims directly concerns the issue of benefits under ERISA § 502(a)(1)(B), thereby prompting preemption. *See, e.g., Coughlin v. Health Care Serv. Corp.*, 244 F. Supp. 2d 883, 885-89 (N.D. Ill. 2002) (holding that insureds' declaratory judgment class action claims, seeking to retain tort settlements following their insurers' claims for reimbursement, were claims to "enforce [their] rights under the terms of the plan" and to "clarify [their] rights to future benefits under the terms of the plan" under ERISA); *Carducci v. Aetna U.S. Healthcare*, 204 F. Supp. 2d 796, 799-804 (D.N.J. 2002) (finding that insureds' suit to recover funds that their ERISA plans had obtained from subrogation liens on tort settlement proceeds were in fact suits for "benefits due" under their plans); *Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 873 (W.D. Tex. 2001) (concluding that an insured's suit to recover money paid to reimburse his ERISA plan from tort settlement proceeds was a suit "to recover benefits due to him under the terms of his plan, *to enforce his rights under the terms of the plan*, or to clarify his rights to future benefits under the terms of the plan").

b) Whether Plaintiffs' Claims Concern a Right versus an Amount to Payment

Moving to plaintiffs' second argument concerning *Davila* prong one – that their claims concern an "amount of payment" under the Plans, as opposed to a "right to payment," thereby weighing against ERISA

preemption – the Court does not find plaintiffs' position persuasive. The Second Circuit has noted a distinction between claims concerning a "*right* to payment" versus claims involving an "*amount* of payment." *See Monetfiore*, 642 F.3d at 331 (emphasis added). Whereas the former class of claims "implicate[s] coverage and benefits established by the terms of the ERISA benefit plan," which may be brought under § 502(a)(1)(B), the latter are "typically construed as independent contractual obligations between the provider and . . . the benefit plan." *Id.*

Plaintiffs take the position that ERISA cannot preempt their claims because the terms of the ERISA Plans are not implicated here. Instead, so their argument goes, their claims solely concern NY GOL § 5-335's impact on defendants' reimbursement obligations. (*See* Pls.' Opp'n at 1, 4-6.) However, this view of plaintiffs' claims is overly narrow. Furthermore, it overlooks the fact that the whole source of contention here is the benefits that plaintiffs received under the Plans, as well as the conditions imposed on such benefits under the Plans, the latter of which gave rise to defendants' currently-contested liens on the benefits. Thus, the matter goes beyond a simple dispute concerning a quantity of payment; instead, it concerns issues regarding benefit eligibility and conditions to the receipt of such coverage under ERISA-governed Plans. In particular, it concerns the effect of third party settlements upon such benefits (following plaintiffs' receipt of coverage) under the Plans. *See Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517 BSJ AJP, 2012 WL 4840807, at *3-4 (S.D.N.Y. Oct. 4, 2012) (noting that only "right to payment" claims "are considered actual claims for benefits and can be preempted"; further clarifying that "'[r]ight

12

to payment' claims involve challenges to benefits determinations, depend on the interpretation of plan language, and often become an issue when benefits have been denied," whereas "'[a]mount of payment' claims involve the calculation and execution of reimbursement payments, depend on the extrinsic sources used for the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements"); *Josephson*, 2012 WL 4511365, at *3 (noting distinction between claims for plan benefits that turn on a "right to payment" as opposed to an "amount of payment," and concluding that because some of the reimbursement claims at issue "were denied for reasons that would implicate coverage determinations under the terms of the United benefit plans," federal subject matter jurisdiction applied).

Although the Court need not (and does not) consider the merits of the case at this stage, even if it were to substantively pass on plaintiffs' challenges to defendants' reimbursement rights, this would require it to look at the terms of the health benefit Plans. Although plaintiffs contend this is not so, saying the Court could simply look to NY GOL § 5-335, which (so they argue) negates defendants' reimbursement power under the Plans, this would not stop the Court from having to examine the Plans. Indeed, plaintiffs concede that they were participants in their employers' health benefit Plans, that they received benefits under the Plans, and that conditions applied to these benefits, once received. Their only argument is to the applicability of some of these conditions, along with their effect on plaintiffs' ability to retain or recover their benefits under the Plans. It would be impossible for the Court to effectively consider any such arguments regarding plaintiffs' rights to benefits without examining, *inter alia*, the Plans' benefit

provisions and/or provisions addressing participants' rights and enforceability of the same.

Indeed, if defendants' reimbursement power is knocked out by virtue of state law, there still remains, at the very least, questions concerning what amount plaintiffs were entitled to receive under the ERISA-governed Plans, what amount they did in fact receive under the Plans, and whether any of the Plans' conditions (with the exception of those concerning reimbursement, in theory voided under state law) affect the amount to which they are now entitled. Stated differently, claiming that NY GOL § 5-335 knocks out the reimbursement provisions from the Plans does not thereby remove plaintiffs' arguments concerning their rights to benefits from the governing terms of the Plans, nor, for that matter, from the sweeping scope of ERISA. *See Montefiore*, 642 F.3d at 331 (describing "right to payment" as "claims that implicate coverage and benefits established by the terms of the ERISA benefit plan" and "amount of payment" as "claims regarding the computation of contract payments or the correct execution of such payments"); *Olchovy v. Michelin N. Am., Inc.*, No. CV 11-1733(ADS)(ETB), 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011) (Report and Recommendation) (stating that *Montefiore* "teaches that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of employee benefit plan, itself").

Plaintiffs' reliance on *Olchovy*, 2011 WL 4916891, to support their "amount of payment" argument does not advance their

13

position. (*See* Pls.' Opp'n at 5-6.) In that case, the plaintiffs alleged that they were entitled to family medical coverage pursuant to a medical agreement with defendants' predecessor, *not* pursuant to an ERISA-governed plan. *Id.* at *5. The Court concluded that this did not constitute a "colorable claim" under ERISA because it was "not a case in which plaintiffs seek benefits under [an ERISA-governed] Plan, or seek to clarify or enforce their rights under the Plan[;] [r]ather, plaintiffs assert that, notwithstanding what the Plan states, they are entitled to . . . coverage . . . pursuant to a separate court-ordered settlement." *Id.* Thus, because the dispute did not concern payment under the ERISA plan, but instead, under the separate, court-ordered settlement agreement, it was not an ERISA "colorable claim." *Id.* Of particular relevance to the *Olchovy* court was the fact that it did not have to examine the terms of the ERISA-governed plans in order to consider plaintiffs' claims. *See id.* at *4-5.

The same cannot be said here. Plaintiffs do not dispute that the challenged payments here consist of benefits they received *under their employers' health benefit Plans*. (*See* Compl. ¶¶ 6-7; Pls.' Opp'n at 2.) There is no separate, court-ordered document dictating the terms to which plaintiffs are entitled. Although plaintiffs claim "the Court need not look further than the New York statute to conclude that this matter does not involve claims for benefits and does not fall within ERISA" (Pls.' Opp'n at 6), this is not true: as previously set forth, turning solely to NY GOL § 5-335 will not assist either plaintiffs or this Court in determining the rights plaintiffs hold, the benefits they are entitled to, and any conditions attached to such benefits under the Plans. Indeed, the allegations here stand in contrast to those cases in which a court has held that the

plaintiff's claim was better categorized as an "amount of payment" dispute, as opposed to a "right to payment" matter. *Compare Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 943-44 (9th Cir. 2009) (holding that action against an ERISA plan administrator based on his alleged oral promise to pay for the majority of beneficiary's medical expenses was not a colorable claim under § 502(a)(1)(B) because dispute concerned the terms of the alleged oral promise, not of the ERISA plan itself), *with Zummo v. Zummo*, No. 11 CV 6256(DRH)(WDW), 2012 WL 3113813, at *4 (E.D.N.Y. July 31, 2012) (because plaintiff's breach-of-contract claim required an examination of an employee benefit plan's language and essentially sought enforcement of a right to payment under the terms of that plan, plaintiff's "claim [fell] squarely within the enforcement provision of ERISA").

For these reasons, plaintiffs' claims are "colorable" under ERISA. Accordingly, they satisfy both facets of the first prong of the *Davila* test.

b. *Davila* Prong Two

The second prong of *Davila* addresses whether any other legal duty, independent of ERISA or the Plans' terms, is implicated. *Davila*, 542 U.S. at 210. The Second Circuit has made clear that the "key words" in conducting this analysis are "other" and "independent." *See Montefiore*, 642 F.3d at 332 (internal quotation marks omitted).

Here, plaintiffs contend that their claims sound separately and independently in state law, namely, NY GOL § 5-335. (*See* Compl. ¶¶ 1, 2, 15, 25-28; *see also* Pls.' Opp'n at 1-2, 6-7.) Plaintiffs assert that NY GOL § 5-335 creates an independent legal duty between plaintiffs and Rawlings/Oxford

Health, as "the interpretation of the benefits plans themselves has no relevance whatsoever," given that Section 5-335 "eliminate[es] [the] contractual rights [of the parties] under [the] benefit plan, [and] arise[s] irrespective of the terms of the relevant employee benefit plan(s)." (Pls.' Opp'n at 6-7.)

The Court is not persuaded. First, *Montefiore* explained that where an entity's conduct is "inextricably intertwined with the interpretation of Plan coverage and benefits," there is no separate or independent duty. 642 F.3d at 332. This is the case here. Specifically, plaintiffs argue against defendants' conduct of exercising their reimbursement rights – *i.e.*, asserting a lien on medical benefits distributed under the Plans – following the trigger of one of the Plans' reimbursement conditions (here, entry into settlement with a third party tortfeasor).

However, defendants' conduct of inquiring about third party suits and seeking reimbursement under the Plans was done solely on account of their expressly stated reimbursement rights in the ERISA-governed Plans, not because of any independent duty under state law. This is a compelling point. The Second Circuit has explained that a court's focus in this context should not be on the *source* of the law *per se* when considering preemption, but rather, on the targeted ERISA entity's *conduct*, and assessing whether the same better triggered ERISA or a different, independent legal duty. *See*, *e.g.*, *Arditi*, 676 F.3d at 300-01 (concluding that ERISA entity's issued employment agreement did not provide separate duty to support a breach of contract claim because the agreement "merely described the benefits [an employee] would receive as a Plan member; it made no promises of benefits separate and

independent from the benefits under the Plan"); *Montefiore*, 642 F.3d at 332 (phone conversations between insurer and provider as to patient coverage did not create a separate duty because the plan required such a pre-approval process).

Here, to assess how defendants allegedly should have acted, the Court still would need to review the terms of the Plans. NY GOL § 5-335 – allegedly voiding any of the Plans' reimbursement rights – would simply become part of the equation, but it would not singularly answer the question as to plaintiffs' rights and entitlement to benefits under the Plans. *See Davila*, 542 U.S. at 213 ("Petitioners' potential liability under the [state law] in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans. So . . . respondents' [state law] causes of action are not entirely independent of the federally regulated contract itself."). Therefore, even if NY GOL § 5-335's applies here (addressed *infra*), plaintiffs cannot get around the fact that their claims (concerning their right to benefits and defendants' rights of reimbursement) derive directly from the Plans.

In short, the Plan remains part and parcel of any state law claims plaintiffs raise here, and the Supreme Court has made clear that an independent duty cannot arise where the "interpretation of the terms of [plaintiffs'] benefit plans forms an essential part of their [state law] claim and [state] liability would exist here only because of [defendants'] administration of ERISA-regulated benefit plans." *Id*. at 213; *Montefiore*, 642 F.3d at 332; *see also Riemer v. Columbia Med. Plan, Inc.*, No. Civ. L-96-2544, 1997 WL 33126252, at *2 (D. Md. Mar. 28, 1997) ("Plaintiffs' claims, in essence, rely on the [state] statute to challenge [defendant's] subrogation provision. Whether the Court

15

characterizes these claims as arising under the [state] statute or under the plan, their resolution requires construing [defendant's] reimbursement provision to determine whether it violates the statute. . . . [B]ecause the resolution of plaintiffs' claims requires plan interpretation as governed by ERISA § 502(a), plaintiffs' claims are 'completely preempted' and recharacterized as federal claims."). Thus, because "no legal duty (state or federal) *independent of ERISA or the [P]lan[s'] terms*" is implicated here, ERISA preemption applies. *Davila*, 542 U.S. at 210 (emphasis added); *see also Rice v. Panchal*, 65 F.3d 637, 644-45 (7th Cir. 1995) (stating that "a suit brought by an ERISA plan participant is an action to 'enforce his rights under the terms of the plan' within the scope of § 502(a)(1)(B) where the claim rests upon the terms of the plan or the 'resolution of the [plaintiff's] state law claim . . . require[s] construing [the ERISA plan]'" (alterations in original) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988))).

Additionally, the Court is not convinced that the law to which plaintiffs direct the court to establish a separate and independent legal duty offers them assistance. Section 5-335 specifically addresses the "[l]imitation of non-statutory reimbursement and subrogation claims in personal injury . . . actions." N.Y. G.O.L. § 5-335. Although the statute explicitly states that "no party entering into [] a settlement [with one or more defendants in tort actions] shall be subject to a subrogation claim or claim for reimbursement by a benefit provider," as well as that "a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party," the statute also contains a clear and highly relevant exception: "*except where there is a statutory right of reimbursement*." *Id.* In other words, where there is such a

statutory right of reimbursement, then Section 5-335's limitations will not apply.

Here, there is a right of reimbursement expressly stated in the ERISA-governed plans. Although plaintiffs challenge this point, taking the position at oral argument that any such right arises under the contract between plaintiffs and defendants, and not under ERISA, the Court disagrees. (*See* Oral Arg. Jan. 22, 2013.)[8] The right of

---

[8] Following oral argument, the Court allowed the parties to submit supplemental briefing regarding matters raised at oral argument, including this notion of the rights at issue here arising under contract, and not ERISA. In their letter, defendants note that "the same enactment that created GOL § 5-335 amended New York Civil Practice Law and Rules ("CPLR") § 4545 to include the phrase 'statutory right of reimbursement.' *See* Act of November 12, 2009, ch. 494, 2009 N.Y. Sess. Laws 1265, 1278-80 (McKinney)." (Defs.' Letter of Jan. 29, 2013, at 1, Docket No. 25.). Defendants argue that this confirms that the phrase, "statutory right of reimbursement," should have the same meaning in both statutes.

To support this argument, defendants note that, prior to amendment, Section 4545 permitted evidence of "'any collateral source such as insurance (except for life insurance), social security (except those benefits provided under [the Medicare Act]), workers' compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff.'" (*Id.* at 1-2 (quoting N.Y. C.P.L.R. § 4545(c) (2008)).) The 2009 amendment allowed evidence of collateral sources "'except for life insurance and those payments as to which there is a statutory right of reimbursement.'" (*Id.* (quoting N.Y. C.L.P.R. § 4545(a) (2012)).) Defendants assert that "[t]here is no indication that this change in formulation was intended to narrow the exceptions in the previous iteration of CPLR § 4545." (*Id.* at 2.) Instead, defendants argue that the amendment simply removed from collateral source treatment those payments "'as to which there is a statutory right of reimbursement,'" including employee benefit plans entitled by law to liens. (*Id.* (citing David D. Siegel, *New Law on Settlement and Collateral Source Rule*, 216 Siegel's Prac. Rev. 1, at *2 (Dec. 2009)).) For this reason, defendants assert that ERISA plans with reimbursement language that are subject to

16

reimbursement contained in the ERISA-governed Plans is enforced by means of ERISA. *See Mittenthal v. N.Y. Univ. Sch. of Med.*, No. 106332/09, 2012 N.Y. Misc. LEXIS 1358, at *6 (Sup. Ct. Mar. 26, 2012) (holding that NY GOL § 5-335 does not apply to ERISA plans because of "ERISA's statutory right of reimbursement"). Thus, because the exception applies, NY GOL § 5-335 cannot even serve as the independent source of law here.

\* \* \*

For these reasons, the Court concludes that both prongs of *Davila* are satisfied. Accordingly, plaintiffs' claims are completely preempted under ERISA.

## B. Express Preemption

In addition to being completely preempted, defendants argue, in the alternative, that plaintiffs' claims also are expressly preempted under ERISA. The Court agrees.

There are two focal points upon which the Court must direct its attention in examining the issue of express preemption. The first is ERISA's "preemption" clause, set forth in Section 514(a). *See* 29 U.S.C. 1144(a). The second is the "savings" clause, set forth in Section 514(b). *See* 29 U.S.C.

§ 1144(b)(2)(A). The Court addresses each in turn.

### 1. The Preemption Clause

Section 514(a) provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Court breaks these elements down.

First, "ERISA applies to employee benefit *plans*, not employee benefits." *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990) (emphasis added). An employee benefit plan under ERISA is defined as "any plan . . . established or maintained by an employer . . . for the purpose of providing . . . participants or their beneficiaries, through the purchase of insurance . . . benefits." 29 U.S.C. §1002(1)(A). In plaintiffs' own words, the contested liens here are "for medical benefits paid by them *pursuant to employee benefits plans*." (Pls.' Opp'n at 1 (emphasis added); *see also id.* at 2 (stating that plaintiffs "are participants in partially and fully-funded insured health plans who had received medical benefits through Defendant Oxford" (emphasis omitted)).) The Oxford Health Plans, therefore, meet the definition of an employee benefit plan under ERISA. The Court next considers NY GOL § 5-335's effect on the Plans.

Section 5-101(4) of New York General Obligations Law sets forth definitions for terms contained in Section 5-335. In this section, it defines a "benefit provider" – one of the principal terms of import in NY GOL § 5-335 – as "*any* . . . health benefit plan . . . employee benefit plan *or any other entity* which provides for payment or reimbursement of health care expenses,

---

enforcement under ERISA § 502(a)(3) have a "statutory right of reimbursement" within the meaning of the statutes. (*Id.* (quoting 9 Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 4545.01, at *3 (David L. Ferstendig ed., LexisNexis Matthew Bender 2d ed. 2012) (referring to ERISA plans, Medicare, and other programs as "statutory providers" that, under CPLR § 4545, "may have a right to be reimbursed out of the [judgment] for their past and anticipated future obligations").) The Court finds this persuasive as to underlying rights here arising under ERISA and not the Plans, in and of themselves.

health care services, . . . or any other benefits under a policy of insurance or contract with an individual or group." N.Y. Gen. Oblig. L. § 5-101 (emphasis added). Under the plain language of the statute, it is clear that a health benefit plan covered by ERISA would fall within the scope of this statute, as such "provides for payment or reimbursement of health care expenses, health care services, . . . or any other benefits." *Id.* Thus, the New York statute upon which plaintiffs rely affects an ERISA-covered employee benefit plan. The question is whether this state law is preempted, which turns on whether the law "relates to" an ERISA plan. As set forth below, the Court concludes that the state law "relates to" an ERISA plan and is expressly preempted.

ERISA mandates preemption where a state law relates to an employee benefit plan. "A claim under state law relates to an employee benefit plan if that law 'has a connection with or reference to such a plan.'" *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 148 (2d Cir. 1995) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (same). A state law also may "relate to" a benefit plan, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). Thus, ERISA "preempts all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990) (alteration, citation, and internal quotation marks omitted).

Section 5-335's express language seeks to impose on a benefit provider – which, under Section 5-101(4)'s plain language,

includes Oxford Health (as it constitutes an entity that provides, *inter alia*, for payment or reimbursement of health care expenses or services) – reimbursement or subrogation obligations of the same type as those imposed by ERISA via its employee benefit Plans. This means that Section 5-335's reimbursement/subrogation obligations (if read according to plaintiffs' interpretation) would intrude upon an area that Congress intended to be fully occupied by federal statutory law. This cannot be.

Indeed, if NY GOL § 5-335 were not preempted by ERISA here, then federal and state laws would be creating the very conflict that Congress sought to prevent in enacting ERISA's broad preemption power. *See* 29 U.S.C. § 1132(a)(1)(B). Where such statutory conflict presents itself, the question arises: which law should govern? Congress has answered, and quite clearly: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144. In short, if NY GOL § 5-335 were permitted to eclipse ERISA's preemptive force in the manner suggested by plaintiffs, it would severely undercut ERISA's "extraordinary pre-emptive power" that "converts an ordinary state common law complaint into one stating a federal claim." *Davila*, 542 U.S. at 209 (quoting *Metro. Life*, 481 U.S. at 65-66).

Perhaps the most compelling point here against plaintiffs' reading of § 5-335, and in favor of preemption, is that such conflict of federal and state laws is not what seems to have been intended by NY GOL § 5-335's express language. As set forth *supra*, Section 5-335 specifically states "no party entering into [] a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of

subrogation or reimbursement against any such settling party," with one principal exception: "[e]*xcept where there is a statutory right of reimbursement*." N.Y. G.O.L. § 5-335 (emphasis added). In this case, there is. The ERISA-covered Plans explicitly provide for such a right, and therefore, Section 5-335 must cede to it by its own language.

In sum, NY GOL § 5-335 is expressly preempted. However, the Court's express preemption analysis does not end here. Even where Section 514(a)'s broad preemption provision is applicable, *see Ingersoll-Rand Co.*, 498 U.S. at 139; *Howard*, 901 F.2d at 1156, it is not without limits: it "excepts from preemption laws that 'regulate insurance.'" *Howard*, 901 F.2d at 1156. It is this exception upon which plaintiffs rely to salvage their claims from ERISA's sweeping effect. (*See* Pls.' Opp'n at 7-13.) Thus, the Court next examines whether the savings clause here can salvage plaintiffs' claims from preemption, *see Franklin H. Williams Trust*, 50 F.3d at 148 (where it is established that a state law relates to an employee benefit plan, "ERISA preemption follows *unless* the saving clause precludes preemption" (emphasis added)), and concludes it does not.

2.   The Savings Clause

Section 514(b)(2)(A) enables a state law, that sufficiently "relate[s] to" a benefit plan, to be "saved" from preemption if it "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (stating "[e]xcept as provided in [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance"); *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 333 (2003). There are two requirements that a state law must satisfy in

order to be deemed a law that regulates insurance under ERISA § 514(b)(2)(A). "First, the state law must be specifically directed toward entities engaged in insurance. Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341-42 (citations omitted).

a.   Whether NY GOL § 5-335 is Specifically Directed at Insurance Entities

Turning to *Miller*'s first prong, NY GOL § 5-335 is not specifically directed at entities engaged in insurance. By its own terms, Section 5-335 expressly limits a benefit provider's ability to enforce a subrogation claim, claim for reimbursement, or lien against a party entering into a settlement, unless a statutory right of reimbursement applies. N.Y. G.O.L. § 5-335. The statute, however, contains a broad definition of what constitutes a "benefit provider" under Section 5-335. Specifically, the term is defined as including "any insurer, health maintenance organization, health benefit plan, preferred provider organization, employee benefit plan or other entity which provides for payment or reimbursement of health care expenses, health care services, disability payments, lost wage payments or any other benefits under a policy of insurance or contract with an individual or group." N.Y. G.O.L. § 5-101(4). Thus, Section 5-335's restriction on an entity's subrogation and reimbursement rights as to a beneficiary's settlement with a third party will apply, regardless of whether the entity asserting such rights is an insurer, and regardless of whether the benefits at issue constitute insurance.

Supreme Court precedent is clear: in determining whether a law regulates

insurance within the meaning of the savings clause, "a law must not just have an *impact* on the insurance industry, but must be *specifically directed* toward that industry." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987) (emphasis added). Although plaintiffs are correct (and defendants do not dispute) that Section 5-335 applies to entities in the insurance field, it stretches the statute's plain language far too far to claim that its sweeping scope – encapsulating numerous entities falling outside of the insurance industry, and applying to benefits beyond the insurance field – is "*specifically* directed" at the insurance industry. In fact, the statute covers employers, including self-funded employer plans, from which many employees often receive their health benefits. *See* N.Y. G.O.L. § 5-335.

The Second Circuit has found the applicability of a statute's terms to employers to be a sufficient reason for concluding that a state law (in that instance, New York Insurance Law § 4216(d)) was not saved from ERISA preemption. *See Howard*, 901 F.2d at 1158 (where statute provided that a certificate holder of a group life insurance policy "shall be notified" of any right that arises to convert the group policy to an individual one, the court held that because "the notice requirement may be fulfilled *either* by the group insurance policyholder – here, the employer – *or* by the insurer," this shows that the law's regulation of notice, including in the employer context, "is not directed toward the insurance industry at all, much less 'specifically'" (emphasis added)).[9]

Other courts, including the Supreme Court, have held similarly. *See, e.g., Pilot Life*, 481 U.S. at 49-51 (where state law of bad faith was based in general contract and tort law, not insurance law, and where it could apply in any breach of contract case – as opposed to exclusively in breach of insurance contract cases – the law did not fall within the savings clause); *Levine*, 402 F.3d at 164-66 (where state law "require[ed] a plaintiff who receives benefits from *any* source other than a joint tortfeasor to deduct that amount from his or her recovery in *any* civil action," the Third Circuit concluded that such did not show that the state statute is "'specifically directed toward the insurance industry,'" even though the

---

factors of this test include: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Pilot Life*, 481 U.S. at 48-49 (alterations, citation, emphasis, and internal quotation marks omitted). The Supreme Court has made clear that "the McCarran-Ferguson factors are considerations to be weighed in determining whether a state law regulates insurance and that none of these criteria is necessarily determinative in itself." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 373 (1999) (alterations and internal citations and quotation marks omitted). That is, while they are "relevant," they are not "required." *Id.* (internal quotation marks omitted). Here, it is clear that NY GOL § 5-335, by its plain language, cannot satisfy at least the third factor to this test (*i.e.*, whether the state law's practice is limited to insurance entities). *See* N.Y. G.O.L. §§ 5-101(4); 5-335. It is also clear that it cannot satisfy the first factor (regarding transfer of a policyholder's risk), as Section 5-335 does not address a transfer of *risk*, but simply one of benefits in the context of third-party settlements. The Court does not believe the second factor (focusing on the policy relationship between an insurer and insured) is applicable to the facts at issue. The fact that Section 5-335 cannot satisfy any of the three factors supports the conclusion that Section 5-335 is not directed at insurance.

---

[9] In *Howard*, the Second Circuit also addressed whether the contested notice practices constituted "the business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* 901 F.2d at 1168 (citing *Pilot Life*, 481 U.S. at 48). The three

statute's legislative history "indicate[s] an intent to lighten the burden on the liability insurance industry," because an "examination of the driving intent behind the statute shows that . . . the law here is a general law of civil procedure" that "governs all civil actions, not merely those involving insurance entities," and the statute's plain language shows its "general applicability" to both "non-insurance parties as well as insurance entities," the sum of which weighs against saving from ERISA preemption); *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1356 n.6 (11th Cir. 1998) ("The law of subrogation, while generally applicable to insurance contracts, is not specifically directed toward the insurance industry." (alteration and internal citations omitted)).

In addition to the fact that the statute covers employers and other non-insurance entities (and further undercutting plaintiffs' position that NY GOL § 5-335 is "specifically directed" at the insurance industry), the New York State Assembly codified NY GOL § 5-335 in the section of the state code "cover[ing] the creation, definition, enforcement, transfer, modification, discharge and revival of various civil obligations," N.Y. C.L.S. Gen. Oblig. Note (2012), *not* in the code's insurance section. This further illustrates the statute's "general applicability," *Levine*, 402 F.3d at 165-66, weighing against its preservation from preemption.

### b.  Whether NY GOL § 5-335 Substantially Affects Risk Pooling Arrangements

Turning to *Miller*'s second requirement, the Court must consider whether NY GOL § 5-335 "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 342. In

short, it does not.

As stated *supra*, the statute expressly removes from its reach claims for subrogation or reimbursement that derive from a "statutory right of reimbursement." N.Y. G.O.L. § 5-335. As defendants note in their motion to dismiss, such a "statutory right of reimbursement" may include claims arising under such government mandated benefits and insurance as, *inter alia*, workers compensation, Medicaid, Medicare, or uninsured or underinsured motorist coverage. (Defs.' Mot. to Dismiss at 15 (citing Joseph D. Jean et al., 5-49 Appleman on Insurance Law and Practice § 49.02 (2012)).) Moreover, Section 5-335's plain terms make clear that it *only* applies to filed settlements of tort actions. *See* N.Y. G.O.L. § 5-335 (describing settlement with "one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death"). This means that there is a wide array of reimbursement and subrogation rights – falling outside of the filed tort settlement realm – that are not implicated under the statute. In other words, and as defendants state in their briefs, the law, for all intents and purposes, only applies to a subset of benefit providers, specifically, those without a statutory right of reimbursement and who do not intervene in underlying third party actions in which the third party settles. (*See* Defs.' Mot. to Dismiss at 15.) Thus, the Court is hard-pressed to accept that the law's effect on risk-pooling arrangements is "substantial[]," where only a slice of certain types of settlements in certain types of cases involving certain types of benefit providers are actually implicated. *Miller*, 538 U.S. at 342.

Plaintiffs attempt to counter this point by directing the Court to two cases, *FMC Corp. v. Holliday*, 498 U.S. 52 (1990) and *Singh*,

335 F.3d 278, which plaintiffs contend support their position against Section 514's preemptive power. However, their reliance on *FMC Corp.* or *Singh* for purposes of establishing a substantial effect on a risk pooling arrangement here is similarly unavailing.

*FMC Corp.* concerned a statute which undisputedly regulated insurance (in fact, by the statute's express language, it *only* applied to insurance policies), and it did not contain any exception similar to that present in NY GOL § 5-335. *See FMC Corp.*, 498 U.S. at 55; *see also Sanders*, 138 F.3d at 1356 n.6 (noting that *FMC Corp.* "applied ERISA's saving clause because the state subrogation law was directly related to insurance," and concluding that in the underlying case, because the subrogation law "covers *all* subrogation actions, including those arising *outside* of the insurance context," *FMC Corp.*'s reasoning was not applicable (first emphasis added)). Similarly, in *Singh*, the statute only applied to HMOs (which the Fourth Circuit concluded constituted insurers), and contained no express exceptions. *Singh,* 335 F.3d at 284-85. These cases' discussion of risk pooling arrangements between actual insurers and insureds under statutes directly concerning insurance are inapposite and distinguishable from the facts and statute at issue here. Stated differently, these cases – with statutes containing no exceptions like those present here, and with language solely directed at insurers, unlike here – are not persuasive to the Court's analysis as to risk pooling arrangements.

### 3.   The Deemer Clause

Alternatively, plaintiffs argue that ERISA's "deemer" clause further supports Section 5-335's applicability to, and regulation of, Oxford Health's Plans. (*See*

Pls.' Opp'n at 8-9.) In particular, plaintiffs state that Supreme Court precedent makes clear that a State may regulate a benefit plan (either directly or indirectly), so long as it is insured; if the plan is uninsured or self-funded, however, the State may not regulate it. (*See id.* (quoting *FMC Corp.*, 498 U.S. at 64 (stating "if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts," but "if the plan is uninsured, the State may not regulate it")).) Because Section 5-335 does not regulate self-funded or uninsured benefit providers, but rather, applies, at least indirectly, to insured benefit plans, plaintiffs argue that it applies to Oxford Health's insured benefit plans.

To best understand plaintiffs' argument, background on the "deemer" clause is necessary. Section 514(b)(2)(B) provides that an employee benefit plan shall not "be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). The Supreme Court has explained the deemer clause as follows:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation

22

insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*FMC Corp.*, 498 U.S. at 61 (alterations in original).

The purpose of the deemer clause, in effect, is to ensure that a state does not "deem" an employee benefit plan an insurance plan in order to avoid preemption, thereby restricting applicability of the savings clause to conventionally insured employee benefit plans. In other words, "ERISA's 'deemer' clause provides an exception to its saving clause that prohibits States from regulating self-funded plans as insurers. Therefore, [a state law] [will] not be 'saved' as an insurance law to the extent it applie[s] to self-funded plans." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S 355, 371 n.6 (2002) (internal citations

omitted).

Breaking this down to basic form, the deemer clause only comes into play once it is determined that a state law is saved from preemption, which, as previously explained, occurs once it is determined that a state law regulates insurance. *See Miller*, 538 U.S. at 336 n.1 (noting that ERISA's saving clause, in order to be applicable, requires that a law regulate insurance). Here, the Court already has determined that NY GOL § 5-335 does not regulate insurance, as the Supreme Court has so interpreted that phrase, because the state law is not "specifically directed toward entities engaged in insurance," nor does the statute "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341-42. Thus, the deemer clause, under the facts presented, is irrelevant. Section 5-335 remains preempted because it is not saved by the savings clause, the conclusion of which bypasses any need to address the deemer clause, which simply distinguishes between insured and uninsured plans that are subject to State laws regulating insurance, with the former subject to indirect State regulation and the latter, not. *See FMC Corp.*, 498 U.S. at 62; *see also Metro. Life Ins. Co.*, 471 U.S. at 734-35.

\*   \*   \*

In sum, Section 5-335 "relates to" an employee benefit plan, here, the Oxford Health Plans, and therefore, it is expressly preempted. Section 5-335 is not saved from preemption under the savings clause because it is not specifically directed at the insurance industry, nor does it substantially affect the risk pooling arrangement between an insurer and insured. Because it is not saved from preemption, ERISA's deemer clause (distinguishing between permissible State regulation of insured plans as opposed to

uninsured or self-funded plans) does not apply. For these reasons, the court concludes that ERISA expressly preempts NY GOL § 5-335, and accordingly, plaintiffs' claims arising thereunder.[10]

---

[10] Although the majority of this analysis addresses plaintiffs' declaratory judgment claim, plaintiffs' unjust enrichment and NY GBL § 349 claim are similarly preempted. Plaintiffs' unjust enrichment claim is simply a reassertion of their declaratory judgment claim, *i.e.*, that defendants may not assert their reimbursement rights on account of NY GOL § 5-335, and accordingly, plaintiffs are entitled to keep benefits under the Plans. (*See* Compl. ¶¶ 49-54.) Because the Court already has concluded that ERISA § 514 preempts any such claim, and because plaintiffs' unjust enrichment lies on the same grounds (as to benefits and reimbursement rights), it likewise is preempted. *See Neidich v. Estate of Neidich*, 222 F. Supp. 2d 357, 375 (S.D.N.Y. 2002). ("Section 514(a) of ERISA explicitly provides that ERISA preempts [unjust enrichment] claims.").

The same applies for plaintiffs' NY GBL § 349 claims. This state law claim relates to the ERISA-covered Plans, as the alleged deceptive acts are defendants' reimbursement actions (taken pursuant to the Plans' express provisions) for portions of tort settlement recoveries based on the medical benefits that plaintiffs received under the Plans. (*See id.* ¶¶ 44-46.) Consideration of the ERISA-covered Plans is, again, necessary to determine whether defendants' reimbursement practices were deceptive and/or plaintiffs' entitlement to the Plans' benefits. Accordingly, plaintiffs' NY GBL § 349 claim is preempted. It also is not saved from preemption, because Section 349, targeting deceptive business acts or practices, "clearly do[es] not 'regulate insurance'" under the Supreme Court's two-part meaning to that phrase, explained *supra*. *Shackleton v. Conn. Gen. Life Ins. Co.*, 817 F. Supp. 277, 282 (N.D.N.Y. 1993) (also stating that "claims that are completely unrelated to the insurance industry often arise under" NY GBL § 349); *see also Berry v. MVP Health Plan, Inc.*, 06-cv-120 (NAM/RFT), 2006 WL 4401478, at *6 (N.D.N.Y. Sept. 30, 2006) (finding that, because NY GBL § 349 claim related to an employee benefit plan covered by ERISA, preemption was warranted).

For these reasons, plaintiffs' unjust enrichment and NY GBL § 349 claims are also expressly preempted.

### c.  Plaintiffs' State-Law Claims Restyled as ERISA Claims

Having concluded that plaintiffs bring an ERISA benefit claim and/or that their claims are preempted by ERISA, the Court next addresses whether such claims may proceed under ERISA § 502(a)(1)(B). For the following reasons, the Court concludes that they cannot.

To begin with, it not clear whether plaintiffs in fact exhausted their ERISA claims. They do not allege as such in their complaint, nor do they challenge (in their opposition papers or at oral argument) defendants' contentions that they have failed to exhaust. Their only position is that an exhaustion analysis is not applicable here because state statutory law governs. (*See* Pls.' Opp'n at 14; Oral Arg. Jan. 22, 2013.) Despite plaintiffs' contentions to the contrary, establishing exhaustion is generally considered a prerequisite to pursuing an ERISA action. *See, e.g., Novella v. Westchester Cnty.*, 661 F.3d 128, 135 n.10 (2d Cir. 2011) (stating that "[a]lthough 'ERISA does not contain an explicit exhaustion[-]of[-]remedies requirement . . . this Circuit has inferred [one]'" (quoting *Burke v. PricewaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 79 n.3 (2d Cir. 2009))); *Burke*, 572 F.3d at 79 (stating that "an ERISA action may not be brought in federal court until administrative remedies are exhausted"); *De-Silva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 538 (E.D.N.Y. 2011) (dismissing plaintiffs' Section 502(a)(1)(B) claim with prejudice for failure to plead exhaustion of administrative remedies under the plan); *Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009) ("[Defendants] argue that [plaintiff] has not stated a viable claim for relief

24

against them because she has not sufficiently pled exhaustion of administrative remedies, a prerequisite to bringing an ERISA action. The Court agrees."). Thus, plaintiffs' failure to plead any exhaustion of administrative remedies here typically would require dismissal of their claims on this ground. *See, e.g., Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133-34 (2d Cir. 2001) (per curiam) (affirming dismissal for failure to exhaust); *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 595 (2d Cir. 1993) (same); *Thomas v. Verizon*, No. 02 Civ. 3083(RCC)(THK), 2004 WL 1948753, at *4 (S.D.N.Y. Sept. 2, 2004) (citing cases in which a failure to exhaust administrative remedies under an ERISA plan led to dismissal).

Plaintiffs are correct that where a party makes a "clear and positive showing" that pursuit of administrative remedies would have been futile, the exhaustion doctrine will not be held against that party. (*See* Pls.' Opp'n at 15); *see also Thomas*, 2004 WL 1948753, at *4 ("Courts will waive the exhaustion requirement if the Plaintiff makes a 'clear and positive showing' that pursuing available administrative remedies would be futile."). However, plaintiffs make no such showing here, either in their pleadings or their opposition papers. At most, they argue that exhaustion would have been futile because had they informed defendants of NY GOL § 5-335's applicability, defendants would have ignored it. (Pls.' Opp'n at 16.) This is not sufficient for purposes of establishing futility. *Cf. Preston v. Am. Federation of Television & Radio Artists*, No. 90 Civ. 7094 (RJW), 2002 WL 1009458, at *4 (S.D.N.Y. May 16, 2002) (finding plaintiffs had failed to make a "clear and positive showing" of futility where they argued that any efforts to exhaust would have been futile because defendants "will merely do

what they have always done;" noting that past denials of similar claims does not establish futility (internal quotation marks omitted)).

However, even assuming *arguendo* that plaintiffs have exhausted their claims, their action still fails. Section 502(a)(1)(B) of ERISA provides relief based on the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Indeed, one of ERISA's "core functional requirements" is that "'[e]very employee benefit plan shall be established and maintained *pursuant to a written instrument*.'" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (emphasis added) (quoting 29 U.S.C. § 1102(a)(1)). As previously stated, ERISA's entire purpose is to "'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits," *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)), and it does so by requiring that claims concerning benefits "stand[] or fall[] by 'the terms of the plan,'" *id.* (quoting 29 U.S.C. § 1132(a)(1)(B)).

Here, plaintiffs do not dispute that they received their benefits pursuant to the express terms of their employers' health benefit Plans, nor do they challenge the fact that the Plans explicitly state that receipt of such benefits is conditioned on plaintiffs reimbursing the Plans should they recover the cost of such benefits from third parties. (*See* Pls.' Opp'n at 2 (stating that plaintiffs "are participants in partially and full-funded [] health plans who had received medical benefits through Defendant Oxford," and noting that "the boilerplate terms of the insurance health plans entitled Defendant Oxford to seek reimbursement for health benefits if a plan participant recovers the

cost of those benefits from a responsible third party").) Stated differently, plaintiffs do not contest the express terms of the Plans, which make clear as to what benefits plaintiffs are entitled, as well as the strings attached to such benefits. Plaintiffs cannot now try to cut such strings by asserting that the explicit terms of the Plans (by which plaintiffs received such benefits in the first place) are not applicable. *See Curtiss-Wright*, 514 U.S. at 83 (stating that "ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents"). Moreover, NY GOL § 5-335 may not serve as the scissors by which plaintiffs may extrapolate their benefit claims from the Plans' explicit conditions for the reasons set forth *supra*.

Not only do plaintiffs' claims fail if restyled as claims under ERISA § 502(a)(1)(B) because the plain language of the Oxford Health Plans expressly conditions their claims to the type of lien at issue here, but they also fail for another reason. The Second Circuit has held that a claim for benefits pursuant to ERISA § 502(a)(1)(B) may only be asserted against the plan itself or particular plan representatives, specifically, the plan administrator and the plan trustees. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) ("[O]nly the plan and the administrators and trustees of the plan in their capacity as such may be held liable." (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)) (internal quotation marks omitted)); *see also Chapman v. Choicecare Long Island Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002); *Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 155 (S.D.N.Y. 2004). Plaintiffs proffer no allegations establishing that defendants here

qualify as any of these types of entities. Further, their only argument against this point on opposition is that, in all of the cases in which the Second Circuit has required that a claim be brought against the plan administrator and the plan trustees, such cases have specifically concerned a recovery-of-benefits claim. (Pls.' Opp'n at 16.) However, this is a recovery-of-benefits claim matter, and plaintiffs' allegations are bereft of any pleadings establishing any of these requisite entities.

Therefore, dismissal of plaintiffs' claims is also warranted on the ground that even if they were restyled as ERISA claims, they would fail.

### d.   State Law Claims On Their Own

Because the Court has determined that plaintiffs' claims are both completely preempted and expressly preempted under ERISA's two separate preemption doctrines, it does not address whether – if the state law claims were not so preempted – plaintiffs' state law claims would prevail on their own terms.

V. CONCLUSION

For the reasons set forth herein, the Court grants defendant's motion to dismiss in full and dismisses plaintiff's Complaint. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2013
      Central Islip, New York

* * *

The attorneys for plaintiffs are Frank R. Schirripa of Hach Rose Schirripa & Cheverie LLP, 185 Madison Avenue, 14th Floor, New York, NY 10016, and Neil S. Torczyner, and Steven J. Harfenist of Friedman, Harfenist & Langer, 3000 Marcus Avenue, Suite 2E1, Lake Success, NY 11042. The attorneys for defendants are Gerald Lawrence, Richard Wolfe Cohen, and Uriel Rabinovitz of Lowey Dannenberg Cohen & Hart, P.C., One North Broadway, White Plains Plaza, White Plains, NY 10601, and Brian D. Boyle, Charles E. Bachman, and Theresa S. Gee of O'Melveny & Myers LLP, 1625 Eye St. NW, Washington, D.C. 20006.