UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 12-CV-01182 (JFB)(AKT)

MEGHAN WURTZ AND MINDY BURNOVSKI,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

THE RAWLINGS COMPANY, LLC, OXFORD HEALTH PLANS (NY), INC.,
AND UNITEDHEALTH GROUP, INC.,

Defendants.

**MEMORANDUM AND ORDER**
October 3, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiffs Meghan Wurtz ("Wurtz") and Mindy Burnovski ("Burnovski") bring this putative class action on behalf of themselves and all others similarly situated (collectively, "plaintiffs") against The Rawlings Company, LLC ("Rawlings"), Oxford Health Plans (NY), Inc. ("Oxford Health"), and UnitedHealth Group, Inc. ("UnitedHealth") (collectively, "defendants"). In the main, plaintiffs claim that New York General Obligations Law § 5-335 ("NY GOL § 5-335") vitiates defendants' right of subrogation or reimbursement against individuals who, like plaintiffs, have settled claims for personal injuries, medical, dental, or podiatric malpractice, or wrongful death. Plaintiffs seek the following relief: (1) a declaratory judgment that defendants "do not have a right to assert and/or collect on any lien and/or right of subrogation and/or right of reimbursement under fully insured health insurance plans against other plaintiffs and/or claimants that have settled personal injury, medical, dental, podiatric malpractice, or wrongful death cases or claims arising and/or pending in New York" (Compl. ¶ 41); (2) damages based upon defendants' alleged violations of New York General Business Law § 349 ("NY GBL § 349"); and (3) restitution based upon defendants' allegedly unjust enrichment.

By Memorandum and Order dated March 28, 2013, the Court granted defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that plaintiffs' claims were completely and expressly preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Because the Court determined

1

that plaintiffs' claims were completely and expressly preempted by ERISA, the Court did not address whether, if plaintiffs' claims were not preempted, they "would prevail on their own terms." *Wurtz v. Rawlings Co., LLC*, 933 F. Supp. 2d 480, 509 (E.D.N.Y. 2013). On July 31, 2014, the Second Circuit vacated the judgment of this Court and remanded the case to this Court, holding that plaintiffs' claims are neither expressly nor completely preempted by ERISA. *See generally Wurtz v. Rawlings Co., LLC*, 761 F.3d 232 (2d Cir. 2014).

Presently before the Court on remand from the Second Circuit is the portion of defendants' motion to dismiss contending that plaintiffs' claims should be dismissed even though they are not preempted by ERISA. For the reasons that follow, the Court grants the motion to dismiss Burnovski's NY GBL § 349 and unjust enrichment claims, and denies the motion in all other respects. First, the Court rejects defendants' argument that NY GOL § 5-335 violates the Contracts Clause of the United States Constitution. Assuming *arguendo* that NY GOL § 5-335 substantially impairs the contracts between the parties, the Court concludes that the statute serves a legitimate public purpose, and that the means chosen to accomplish this purpose were reasonable and necessary. Second, the Court cannot conclude at this juncture that the voluntary payment doctrine bars Wurtz's claims. Third, the Court determines that Wurtz has alleged a viable NY GBL § 349 claim, but that Burnovski's claim must be dismissed for failure to allege actual injury. However, because better pleading may cure this defect, the Court grants Burnovski leave to re-plead this claim. Fourth, the Court holds that Burnovski's unjust enrichment claim must be dismissed because Burnovski concedes that she never paid defendants anything. However, Wurtz's unjust enrichment claim may proceed because, if the voluntary payment doctrine does not bar Wurtz's claim, then equity and good conscience would require restitution to Wurtz in the amount that she has already paid to defendants.

I. BACKGROUND

A. Facts

1. Allegations of the Complaint

The Court has set forth the allegations of the complaint in its March 28, 2013 Memorandum and Order, *see Wurtz*, 933 F. Supp. 2d at 486–88, and does not repeat those facts here. The Court reserves recitation of certain facts for its analysis of the specific issues raised by the present motion. The Court assumes these facts to be true for purposes of deciding the pending motion, and construes those facts in the light most favorable to plaintiffs.

2. New York Statutory Law

At the time defendants filed their motion to dismiss, NY GOL § 5-335(a) read as follows:

> When a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, *except for those payments as to which there is a statutory right of reimbursement*. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in

derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.

*Except where there is a statutory right of reimbursement*, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.

N.Y. Gen. Oblig. Law § 5-335(a) (2009) (emphasis added).

The New York Legislature amended NY GOL § 5-335 on November 13, 2013. *See* 2013 N.Y. Sess. Laws Ch. 516 (McKinney). The 2013 act removed the language emphasized *supra* and added a new subsection (c) to the statute, which provides that NY GOL § 5-335 "shall not apply to a subrogation or reimbursement claim for recovery of benefits provided by Medicare or Medicaid, specifically authorized pursuant to article fifty-one of the insurance law, or pursuant to a policy of insurance or an insurance contract providing workers' compensation benefits." As amended, NY GOL § 5-335(a) states:

When a person settles a claim, whether in litigation or otherwise, against one or more other persons for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by an insurer. By entering into any such settlement, a person shall not be deemed to have taken an action in derogation of any right of any insurer that paid or is obligated to pay those losses or expenses; nor shall a person's entry into such settlement constitute a violation of any contract between the person and such insurer.

No person entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by an insurer and an insurer shall have no lien or right of subrogation or reimbursement against any such settling person or any other party to such a settlement, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said insurer.

N.Y. Gen. Oblig. Law § 5-335(a) (2014). The amended version of NY GOL § 5-335 applies "to all settlements entered into on or after November 12, 2009." 2013 N.Y. Sess. Laws Ch. 516 (McKinney).

B. Procedural History

Plaintiffs commenced this action on February 2, 2012, in the Supreme Court of the State of New York, County of Nassau. Defendants removed the instant case to this Court on March 9, 2012.

Defendants filed the pending motion to dismiss on May 30, 2012. Plaintiffs filed their opposition on June 29, 2012, and defendants filed their reply on July 16, 2012.

3

On December 26, 2012, this case was reassigned from the Honorable Arthur D. Spatt to the undersigned. The Court heard oral argument on January 22, 2013. On January 29, 2013, and February 6, 2013, the parties submitted letters addressing issues raised during oral argument. On March 28, 2013, the Court issued a Memorandum and Order granting the motion to dismiss on the grounds that plaintiffs' claims were completely and expressly preempted by ERISA. The judgment of this Court entered the next day.

Plaintiffs filed a notice of appeal on April 26, 2013. On July 31, 2014, the Second Circuit held that plaintiffs' claims were neither completely nor expressly preempted by ERISA. Accordingly, the Second Circuit vacated the judgment of this Court and remanded the case to this Court for further proceedings on plaintiffs' claims. The mandate of the Second Circuit was docketed in this Court on August 22, 2014.

Following its receipt of the Second Circuit's mandate, the Court held a telephone conference with the parties on September 17, 2014. The Court indicated its intention to rule on the remainder of defendants' motion to dismiss and asked defendants whether they intended to withdraw their "statutory right of reimbursement" argument in light of the 2013 amendment to NY GOL § 5-335.[1] In a letter dated September 18, 2014, counsel for defendants confirmed their withdrawal of that argument.

This matter is now fully submitted, and the Court has considered all of the parties' submissions.

---

[1] Defendants had argued that the exception for "a statutory right of reimbursement"—the language removed by the 2013 amendment to NY GOL § 5-335—exempted ERISA plans.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, the Court instructed district courts to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that, in adjudicating a motion to dismiss under Rule 12(b)(6), it is entitled to consider: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2)

documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *E.g. Jones v. Nickens*, 961 F. Supp. 2d 475, 483 (E.D.N.Y. 2013); *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F. Supp. 2d 533, 539 (E.D.N.Y. 2013), *aff'd*, 542 F. App'x 89 (2d Cir. 2013); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 524 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x 741 (2d Cir. 2014).

III. DISCUSSION

A. Contracts Clause

As an initial matter, defendants contend that NY GOL § 5-335 violates the Contracts Clause of the United States Constitution. For the following reasons, this Court disagrees.

The United States Constitution prohibits a state from passing any "Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1. "Although facially absolute, the Contracts Clause's prohibition 'is not the Draconian provision that its words might seem to imply,'" and state laws that impair a contractual obligation "do not necessarily give rise to a viable Contracts Clause claim." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367–68 (2d Cir. 2006) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978)). Importantly, the Contracts Clause "does not trump the police power of a state to protect the general welfare of its citizens." *Id.* at 367.

To determine whether a state law violates the Contracts Clause, the Second Circuit considers "three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary." *Id.* at 368; *see also Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 52–53 (2d Cir. 1998); *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).

With respect to the first element—whether the impairment is substantial—the "primary consideration . . . is the extent to which reasonable expectations under the contract have been disrupted." *Sanitation & Recycling Indus.*, 107 F.3d at 993. "When an industry is heavily regulated, regulation of contracts may be foreseeable," *id.*, and the party asserting a Contracts Clause violation "will ordinarily not be able to prevail," *Sal Tinnerello & Sons*, 141 F.3d at 53. As insurance is a heavily regulated industry in New York, the Court doubts that the impairment of the contracts at issue here qualifies as "substantial." *See, e.g.*, *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 413–16 (1983) (holding that impairment of contract was not substantial where the parties to the contract were "operating in a heavily regulated industry"). Nonetheless, the Court need not decide whether the impairment is substantial in this case because, even assuming *arguendo* that this element were met, the Court concludes that NY GOL § 5-335 serves a legitimate public purpose by reasonable and necessary means and, therefore, does not violate the Contracts Clause.

As for the second element, "[t]he requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412. Here, the stated purpose of NY GOL § 5-335, as expressed by the New York Legislature in the 2013 act amending NY GOL § 5-335, is "to ensure that . . . the burden of payment for health care services, disability payments, lost wage payments or any other benefits for the victims of torts will be borne by the insurer and not any party to a settlement of such a victim's tort claim." 2013 N.Y. Sess. Laws Ch. 516 (McKinney). Moreover, as the Second Circuit has observed, NY GOL § 5-335 "eliminated an asymmetry between jury verdicts and settlements that tended to discourage the settlement of personal injury lawsuits." *Wurtz*, 761 F.3d at 236. "In New York, jury awards in personal injury actions may not include medical expenses for which an insurer has paid"; however, until the enactment of NY GOL § 5-335, settlements did "not eliminate an insurer's subrogation right." *Id.* at 236 n.3. Thus, before the enactment of NY GOL § 5-335, "tortfeasors would be unlikely to include medical expenses in settlement offers (as these would not be included in awards at trial), and yet insurers could use subrogation to extract from tort settlements medical expenses that they had covered." *Id.* In this Court's view, these are legitimate public purposes. "Regulation of the insurance industry, in order to provide adequate protection of the public, is surely a proper subject for the state's exercise of its police power." *Country-Wide Ins. Co. v. Harnett*, 426 F. Supp. 1030, 1035 (S.D.N.Y. 1977) (rejecting Contracts Clause challenge), *aff'd*, 431 U.S. 934 (1977). So too is the encouragement of settlements, which can be fairly characterized as "'an important general social or economic problem.'" *Buffalo Teachers Fed'n*, 464 F.3d at 368 (defining "legitimate public purpose" in this context) (quoting *Sanitation & Recycling Indus.*, 107 F.3d at 993).

Finally, turning to the third element, the Court notes that "[w]hen a law impairs a private contract," as is the case here, "substantial deference is accorded to the legislature's judgments as to the necessity and reasonableness of a particular measure." *Buffalo Teachers Fed'n*, 464 F.3d at 369 (internal citations and quotation marks omitted); *see also Sanitation & Recycling Indus.*, 107 F.3d 985, 994 (2d Cir. 1997) ("When reviewing a law that purports to remedy a pervasive economic or social problem, our analysis is carried out with a healthy degree of deference to the legislative body that enacted the measure."). With respect to this element, defendants do not even suggest that the New York Legislature acted unreasonably in enacting NY GOL § 5-335, and this Court defers to the New York Legislature's determination that the enactment of NY GOL § 5-335 was a reasonable and necessary means to encourage the settlement of tort claims and to ensure that the burden of payment for health care services and the like will be borne by the insurer.

Accordingly, the Court concludes that NY GOL § 5-335 does not violate the Contracts Clause. The Court proceeds to consider defendants' other arguments for dismissal.

B. Voluntary Payment

Defendants argue next that the voluntary payment doctrine bars Wurtz's claims. The Court cannot conclude that Wurtz's claims are barred at this juncture.

"The voluntary payment doctrine precludes a plaintiff from recovering payments 'made with full knowledge of the

facts' and with a 'lack of diligence' in determining his contractual rights and obligations." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 397 (N.Y. App. Div. 2002), *aff'd* 100 N.Y.2d 525 (2003)). "The doctrine does not apply, however, when a plaintiff made payments under a mistake of fact or law regarding the plaintiff's contractual duty to pay." *Id.*; *see also Dillon*, 100 N.Y.2d at 526 ("That common-law doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.").

The Second Circuit has held that dismissal based upon the voluntary payment doctrine may be inappropriate at the motion to dismiss stage. *See Spagnola*, 574 F.3d at 73–74 (concluding that motion to dismiss stage was "too early in this case to conclusively answer" whether voluntary payment doctrine barred a breach of contract claim). The voluntary payment doctrine is an affirmative defense, and, therefore, its applicability must be apparent on the face of the complaint to warrant dismissal under Rule 12(b)(6). *See, e.g.*, *Partell v. Fid. Nat'l Title Ins. Servs.*, No. 12-CV-376S, 2012 WL 5288754, at *8 (W.D.N.Y. Oct. 24, 2012) (noting that voluntary payment doctrine is affirmative defense, and denying motion to dismiss where applicability of this defense was apparent on face of complaint); *Young v. Citimortgage, Inc.*, No. 11-CV-01363-WWE, 2012 WL 4371532, at *2 (D. Conn. Sept. 24, 2012) ("Plaintiffs are not required to plead facts in the complaint in anticipation of affirmative defenses such as the voluntary payment doctrine.").

In the instant case, Wurtz alleges that she paid $1,316.87 to Rawlings due to (mis)representations by defendants concerning her obligation to pay and a mistaken view of her legal obligations. Certainly nothing on the face of the complaint suggests that Wurtz paid Rawlings with full knowledge of the facts and a lack of diligence in determining her contractual obligations. Therefore, the Court holds that the voluntary payment doctrine cannot apply at this juncture as a bar to Wurtz's claims. *See, e.g.*, *Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, No. 07-CV-0612 (BMC), 2012 WL 293594, at *3 (E.D.N.Y. Jan. 31, 2012) ("When, as here, a party claims that she made the payment under a significant mistake of fact, dismissal under Rule 12(b)(6) on this ground is inappropriate."); *Dillon*, 740 N.Y.S.2d at 397 ("The common-law voluntary payment doctrine bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law.").

### C. NY GBL § 349

Defendants also maintain that plaintiffs have failed to a state a claim for deceptive business practices under NY GBL § 349. For the following reasons, this Court disagrees.

NY GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola*, 574 F.3d at 74 (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)). "It is not necessary for the plaintiff to demonstrate that the defendant acted intentionally or with scienter." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403–04 (S.D.N.Y. 2010) (citing *Watts v. Jackson Hewitt Tax Serv.*

7

*Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008)); *see, e.g.*, *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 570 (E.D.N.Y. 2010) ("[A] Section 349 claim need not include proof of intent to deceive, scienter, or justifiable reliance."). "[B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (internal citations omitted).

1. Consumer-Oriented Act or Practice

The consumer-oriented element of a NY GBL § 349 claim "'has been construed liberally.'" *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013) (quoting *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)). "Consumer-oriented" has been defined in this Circuit as "conduct that potentially affects similarly situated consumers." *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (internal citation and quotation marks omitted). As the New York Court of Appeals has stated, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Instead, the critical question is whether "the acts or practices have a broad[ ] impact on consumers at large." *Id.*; *see, e.g.*, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51–53 (2d Cir. 1992) (holding that plaintiffs satisfied the consumer-oriented element of a NY GBL § 349 claim against insurance company by presenting evidence that the insurance company had engaged in similar practices against other policyholders). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Feldman*, 210 F. Supp. 2d at 301 (collecting cases).

Plaintiffs' allegations in the instant case satisfy this element of a NY GBL § 349 claim. In particular, they allege that Rawlings issued a company-wide statement in November 2009 "that maintained the company's position that lien and/or right of subrogation for all insurance health plans is valid and enforceable against Plaintiffs and other similarly situated Class members." (Compl. ¶ 24.) Moreover, plaintiffs allege that "Defendants falsely represented to Plaintiffs and similarly situated Class members that Plaintiffs and other Class members were obligated to pay liens under fully insured health insurance plans." (*Id.* ¶ 44; *see also id.* ¶¶ 25–28.) Thus, contrary to defendants' position, plaintiffs have alleged "repeated acts of [alleged] deception directed at a broad group of individuals." *Feldman*, 210 F. Supp. 2d at 301 (collecting cases). Based upon these allegations, plaintiffs have adequately pled the consumer-oriented element.

2. Misleading Statements

Because the Court concludes that plaintiffs have adequately alleged the first element of a NY GBL § 349 claim, the Court must consider whether plaintiffs have alleged an act or practice that was misleading in a material respect. *See, e.g.*, *Spagnola*, 574 F.3d at 74. "To determine whether an act or practice is materially misleading, a court looks to whether it could 'mislead a reasonable consumer acting reasonably under the circumstances.'"

*Chiste*, 756 F. Supp. 2d at 403 (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26).

In addition to the allegations cited *supra*, plaintiffs allege that Rawlings sent "no less than two letters" to Wurtz's counsel asserting a right of subrogation or reimbursement on behalf of UnitedHealth. (*Id.* ¶ 18.) When Wurtz's counsel notified Rawlings that Wurtz had settled her tort action, plaintiffs allege that Rawlings sent to Wurtz a letter and a copy of the November 2009 position statement, in which it reaffirmed that it had a lien on Wurtz's settlement. (*Id.* ¶ 19.) Then, in a letter to Wurtz's counsel, Rawlings stated again that it had "a claim/lien for medical benefits paid on behalf of the patient [Wurtz] for the above referenced loss," but acknowledged the "differing legal viewpoints regarding the application of New York law CPLR § 4545 and General Obligations Law § 5-335." (*Id.*) Plaintiffs allege that Rawlings sent an identical letter to Burnovski. (*Id.* ¶ 21.)

These allegations suffice to state the misleading element of a NY GBL § 349 claim. As an initial matter, in light of the Second Circuit's decision in *Wurtz* and the plain meaning of NY GOL § 5-335, the Court concludes that NY GOL § 5-335 does, in fact, prevent defendants from asserting a lien or right of subrogation or reimbursement against plaintiffs "with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by" defendants. *See* N.Y. Gen. Obzig. Law § 5-335(a). Moreover, the Second Circuit's decision in *Wurtz* confirms that NY GOL § 5-335 prevented defendants from asserting such liens or rights even before the statute was amended in 2013, when it included the "statutory right of reimbursement" language. *See* N.Y. Gen. Oblig. Law § 5-335 (2009). In *Wurtz*, the Second Circuit rejected defendants' argument that their right of reimbursement derives from ERISA simply because the contractual right of reimbursement is enforced by means of ERISA. *See* 761 F.3d at 243. Accordingly, defendants' assertions of their rights to reimbursement or subrogation were incorrect in that they ran contrary to state law, even under the old version of NY GOL § 5-335 that applied when they made those assertions.

Furthermore, at the motion to dismiss stage, the Court cannot accept defendants' argument that they fully informed plaintiffs about the strength of their legal position because, in one letter to Wurtz's counsel, plaintiffs allege that defendants acknowledged the "differing legal viewpoints regarding the application of New York law CPLR § 4545 and General Obligations Law § 5-335." (Compl. ¶ 19.) According to plaintiffs' allegations, which the Court must accept as true for purposes of deciding the present motion, defendants asserted their rights of reimbursement and subrogation without qualification on numerous occasions. (*See id.* ¶¶ 24–28, 44.) Based on those allegations, the Court cannot dismiss the NY GBL § 349 claims for failure to allege a materially misleading act or practice. *Cf. Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (recognizing that "collecting fees in violation of other federal or state laws may satisfy the misleading element of § 349" (citing cases)). Of course, following discovery, defendants may move for summary judgment depending upon the precise content of their representations to plaintiffs.

3. Injury

Finally, defendants argue that Burnovski's NY GBL § 349 claim must be dismissed because she alleges that she did not settle her underlying tort action, and,

therefore, did not make any payment to defendants. Burnovski asserts in response that defendants "unfairly discouraged [her] from settling her case—a significant litigation decision in her personal injury action." (Pls.' Opp'n, at 22.)

To satisfy the injury element of a NY GBL § 349 claim, "a plaintiff must prove 'actual' injury . . . , though not necessarily pecuniary harm." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). Here, the problem with Burnovski's theory of actual injury is her failure to plead it in the complaint. Having examined all allegations in the complaint and construed them in plaintiffs' favor, the Court cannot find any allegation in the complaint suggesting that Burnovski suffered actual injury by not settling her case. Thus, even if the discouragement of settlement could result in an actual injury for purposes of NY GBL § 349, Burnovski has not alleged such an injury here. Absent allegations explaining how defendants' conduct discouraged her from settling her case, and what the actual injury was, the Court concludes that Burnovski's NY GBL § 349 claim must be dismissed for failure to allege actual injury. *See Calingo v. Meridian Res. Co. LLC*, No. 11-CV-628 (VB), 2011 WL 3611319, at *14 (S.D.N.Y. Aug. 16, 2011) ("According to the complaint, defendants asserted a lien against the proceeds of the settlement, but there is no allegation that defendants collected on that lien. Without such an allegation, plaintiffs cannot show they suffered an injury."). However, the Court grants Burnovski leave to re-plead this claim in order to cure this pleading deficiency. *See, e.g.*, *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.").

D. Unjust Enrichment

Finally, the Court considers defendants' arguments for the dismissal of the unjust enrichment claim. For the following reasons, the Court grants the motion to dismiss Burnovski's unjust enrichment claim, but not Wurtz's.

"Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: 'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). An unjust enrichment claim "may be asserted only in the absence of an agreement between the parties—be it oral, written, or implied-in-fact." *Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13-CV-4373 (JFB)(WDW), 2013 WL 6235862, at *7 (E.D.N.Y. Dec. 3, 2013) (citing *Beth Israel Med. Ctr.*, 448 F.3d at 586–87).

With respect to Burnovski, plaintiffs allege that Burnovski never paid a portion of a settlement to defendants because, in fact, she never reached a settlement in her underlying tort action. (*See* Compl. ¶ 7.) Defendants argue, and plaintiffs concede, that Burnovski's unjust enrichment claim must, therefore, be dismissed. The Court agrees because the complaint fails to allege that defendants benefitted at Burnovski's expense. Accordingly, the Court grants defendants' motion to dismiss Burnovski's unjust enrichment claim.

As for Wurtz's unjust enrichment claim, defendants argue that equity and good conscience do not require the return of

Wurtz's payment because Wurtz is "attempting to use GOL § 5-335 to avoid her contractual reimbursement obligation," and the existence of this contractual obligation precludes a claim for unjust enrichment, which may be asserted only in the absence of an agreement between the parties. (*See* Defs.' Mem., at 21–22.) As is readily apparent, defendants' argument is premised upon the enforceability of the contractual reimbursement provision in Wurtz's health plan. That provision is not enforceable, however, for the reasons discussed *supra*. Therefore, if the voluntary payment doctrine does not bar Wurtz's claims, then equity and good conscience would require the return of the money Wurtz paid to defendants. *See, e.g.*, *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 273 (E.D.N.Y. 2012) (holding that plaintiffs stated claim for unjust enrichment by alleging "that they paid defendants monies for which they were not entitled under New York's no-fault scheme"). Accordingly, the Court denies defendants' motion to dismiss Wurtz's unjust enrichment claim.

## IV. CONCLUSION

For the reasons set forth herein, the Court grants the motion to dismiss Burnovski's NY GBL § 349 and unjust enrichment claims. The Court denies the motion in all other respects. If Burnovski wishes to re-plead her NY GBL § 349 claim, she shall file an amended complaint no later than November 3, 2014.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 3, 2014
      Central Islip, NY

\* \* \*

Plaintiffs are represented by Frank R. Schirripa of Hach Rose Schirripa & Cheverie LLP, 185 Madison Avenue, 14th Floor, New York, NY 10016, and by Neil S. Torczyner and Steven J. Harfenist of Harfenist Kraut & Perlstein, LLP, 3000 Marcus Avenue, 2nd Floor East, Lake Success, NY 11042. Defendant Rawlings is represented by Gerald Lawrence, Richard Wolfe Cohen, and Uriel Rabinovitz of Lowey Dannenberg Cohen & Hart, P.C., One North Broadway, White Plains Plaza, White Plains, NY 10601. Defendants Oxford Health and UnitedHealth are represented by Brian D. Boyle and Theresa S. Gee of O'Melveny & Myers LLP, 1625 I Street, NW, Washington, DC 20006, and by Charles E. Bachman of O'Melveny & Myers LLP, 7 Times Square, 34th Floor, New York, NY 10036.